Carolyn JEFFERSON, on behalf of herself and all others similarly situated, Plaintiff,

v.

SECURITY PACIFIC FINANCIAL SERVICES, INC., Defendant.

No. 94 C 3476.

United States District Court, N.D. Illinois, Eastern Division.

April 13, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, Charles M. Baird, Law Offices of Charles M. Baird, Miami Beach, FL, for Carolyn Jefferson, on behalf of herself and all others similarly situated.

William E. Deitrick, Lynne M. Raimondo, Karen Ann Hagnell, Mayer, Brown & Platt, Chicago, IL, for Security Pacific Financial Services, Inc.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case involves a consumer credit transaction governed by the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"),[1] and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.[2] Plaintiff, Carolyn Jefferson, seeks certification of a class pursuant to Rule 23. For the reasons which follow, plaintiff's motion is denied.

### BACKGROUND

■ Courts are instructed not to examine the merits of the case when deciding class certification issues, *Retired Chicago Police Assoc. v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), although "[t]he boundary between a class determination and the merits may not always be easily discernable." *Eggleston v. Chicago Journeymen Plumbers' Local Union,* 657 F.2d 890, 895 (7th Cir.1981); *accord General Tel. Co. of Southwest v. Falcon,* 457

1. All citations to this statute will take the form "TILA, § ——," omitting the always applicable reference to 15 U.S.C.

2. All citations to this Regulation will take the form "Reg. Z, § ——," omitting the always applicable reference to 12 C.F.R.

U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). However, for purposes of a class certification motion, a court must accept as true the factual allegations contained in the complaint. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The following allegations are therefore taken as true for purposes of this motion.

On July 26, 1991, Carolyn Jefferson entered into a mortgage loan transaction with defendant, Security Pacific Financial Services, Inc. ("Security Pacific"), for the purpose of refinancing various consumer debts.[3] After execution of the agreement, Security Pacific, pursuant to standard practice, contracted with a third party, TRW Real Estate Loan Services ("TRW"), to disburse loan proceeds to the third party creditors. Plaintiff agreed to pay $90 to TRW for the specific purpose of performing this service.

Security Pacific, in making its TILA disclosures, excluded the $90 loan disbursement fee[4] ("fee") from the "finance charge" and included the fee in the "amount financed." According to Jefferson, Security Pacific's inclusion of the charge in the "amount financed," rather than in the "finance charge," violated the disclosure provisions of TILA and Regulation Z, § 226.18(d) & n. 41. Pursuant to TILA and Regulation Z, Security Pacific was required to provide plaintiff with accurate disclosures of the "finance charge" and "amount financed." 12 C.F.R. § 226.18. Jefferson claims that Security Pacific's disclosures were inaccurate because Section 1605(a) defines a loan disbursement fee as a "finance charge," rather than an "amount financed,"[5] and Regulation Z imposes a requirement of redisclosure when the inaccuracy of the disclosed finance charge exceeds the actual finance charge by more than $10.[6] Plaintiff concludes that the alleged disclosure violation gives her the right to rescind her loan for a period of three years. Plaintiff also concludes that a class of plaintiffs who executed similar loans with Security Pacific between June 6, 1991 and June 6, 1994, are entitled to rescission. Plaintiff notified Security Pacific of her election to rescind on or about May 31, 1994. Plaintiff filed her complaint in this Court on June 6, 1994.

Security Pacific denies plaintiff's class allegations, arguing that even if these facts are true, the proposed class, as defined, is overbroad because the TRW form that was used in connection with Jefferson's loan transaction was used only in connection with the approximately 77 loan transactions that were closed from June, 1991, to June, 1992, on behalf of Security Pacific by TRW. The TRW form was not used in connection with any of the loan transactions that were closed on behalf of Security Pacific by other title companies.[7]

## DISCUSSION

Jefferson also seeks to certify the following proposed class of persons:

> All persons who, within three years prior to June 6, 1994, entered into a loan with Security Pacific Financial Services, Inc. ("Security Pacific") for purposes other than acquiring or building a residence (as indicated by the loan file) which Security

3. Jefferson's loan was secured by a mortgage on her principal residence.

4. Security Pacific claims that plaintiff has "mischaracterized" the $90 fee (charged in her case) as a "loan disbursement fee." Security Pacific asserts that the fee was actually used to secure a first mortgage title insurance policy. (Resp. at 1–2 n. 3). Security Pacific does not dispute that the fee was disclosed to Jefferson as part of the "amount financed" rather than the "finance charge" on the federal disclosure statement. (Resp. at 2).

5. *See also* 12 C.F.R. § 226.4(a).

6. *See* 12 C.F.R. § 226.18(d) and n. 41.

7. Although the facts in this paragraph are not contained in the complaint, but rather were supplied by Security Pacific in its Response to the Class Certification Motion, these facts are relevant for purposes of the issues currently before the Court. Security Pacific argues that "[b]ecause [Jefferson's] ... authorized document is a TRW form and not a Security Pacific form, and was only used for certain loans that were closed by TRW, the purported class could only include borrowers who received loans from Security Pacific that were closed by TRW." (Resp. at 4).

Pacific documented as a consumer credit transaction, secured by the person's principal residence. Additionally, all these persons shall have received a Truth in Lending disclosure statement from Security Pacific, which excluded fees for disbursing the loan proceeds from the "finance charge" and included the fee(s) in the "amount financed."

### Legal Standards

Class certification is governed by Rule 23. A plaintiff seeking certification of a class bears the burden of proving that each of the requirements under Rule 23 has been met. *General Telephone Co. v. Falcon*, 457 U.S. 147, 162, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984). Rule 23(a) requires a plaintiff to establish four elements: numerosity,[8] commonality,[9] typicality[10] and adequacy of representation.[11] Failure to meet any of these four requirements will preclude certification of the class. *Patterson v. General Motors Corp.*, 631 F.2d

476, 481 (7th Cir.), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). If these prerequisites are satisfied, the court must determine whether one of the standards of Rule 23(b) is met. In this case, Jefferson seeks certification under Rule 23(b)(3).[12] Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

In considering whether common questions of law and fact predominate under Rule 23(b)(3), the common issues need not be dispositive of the entire litigation. *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D.Ill. 1986). "Instead, resolution of the predominance question tends to focus on the form trial on the issues would take, with consideration of whether the action would be manageable." *Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D.Ill.1992) (citing *Simer v. Rios*, 661 F.2d

---

**8.** A court may conclude that the numerosity requirement is met by relying on common sense assumptions. *In re VMS Sec. Lit.*, 136 F.R.D. 466, 473 (N.D.Ill.1991). Moreover, "there is [no] need for individual adjudications to decide whether this element is met if there is alternative evidence suggesting numerosity." *Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D.Ill.1992).

**9.** Rule 23(a)(2) requires that there be questions of law and fact common to the class. A common nucleus of operative fact is usually enough to satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir.1992) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949–50 (N.D.Ill.1984)). Some factual variation among the class grievances will not defeat a class action. *Rosario*, 963 F.2d at 1017 (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

**10.** A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Although Rule 23(a)(3) does not require all class members to suffer the same injury as the class representative, *id.; Rosario*, 963 F.2d at 1018, the rule requires a court to look at whether the defendant's conduct and legal theory are the same. *De La Fuente*, 713 F.2d at 233; *Rosario*,

963 F.2d at 1018. Determination that the plaintiff's claims are typical of the class claims necessarily compels a finding that common questions of fact exist. *Newberg On Class Actions*, § 3.13 (1994).

**11.** Adequacy of representation is met when the class representative is a member of the class that she seeks to represent, *General Telephone Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982); *Machella v. Cardenas*, 653 F.2d 923, 926 (5th Cir.), *reh'g denied*, 659 F.2d 650 (1981); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498–99 (7th Cir.1972); *McGlothlin v. Connors*, 142 F.R.D. 626, 632 (W.D.Va.1992), the class representative protects "the different, separate, and distinct interest(s) of the class members," and the representative's counsel is adequate. *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 598 (7th Cir.1993) (citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986) (*en banc*)). Additionally, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Fitzsimmons*, 805 F.2d at 697.

**12.** Rule 23 requires a plaintiff to satisfy all of the requirements of Rule 23(a) and one of the three requirements of Rule 23(b). Jefferson's Motion and Memorandum refer only to subsection (3) of Rule 23(b), so this Memorandum Opinion will only discuss subsection (3).

655, 672 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)). Manageability is a "consideration [which] encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974).

### Analysis

 Plaintiff claims that all requirements for Rule 23 certification have been met, and Security Pacific claims that these requirements have not been met. After careful review of the briefs, the Court finds that Plaintiff's motion must be denied, because she has failed to satisfy the predominance requirement of Rule 23(b)(3).[13]

### A. Rescission

 Manageability of the class issues at trial is the primary focus of the court's inquiry under Rule 23(b)(3). Security Pacific's main argument against certification of the class goes to the heart of this question, namely, that rescission is a purely personal remedy for technical violations of TILA and therefore cannot be maintained as a class action. According to Security Pacific, certification of a class seeking a declaratory judgment regarding a right of rescission for technical disclosure violations would violate Section 1635(b) of TILA, public policy and the scant (but currently existing) case law on this issue. We agree.

### 1. The Statute

Section 1635(b), which governs rescission claims brought under TILA, does not expressly provide for class actions. Conversely, Section 1640, which governs damages, was amended in 1970 to expressly include class actions and to impose a cap on individual and class action damages. Act of October 28, 1974, Pub.L. 93–495, 88 Stat. 1500 (amending TILA Section 1640(a)(2)(B)). Security Pacific argues that Congress' failure to amend Section 1635(b) in 1974 evidences a Congressional intent to treat rescission as a purely personal remedy, which is not subject to class action. Security Pacific also argues that when Congress did amend Section 1635 in 1980, the amendment gave courts "equitable authority to tailor the rescission steps to meet the needs of each borrower and creditor." (Resp. at 10). Security Pacific interprets the 1980 amendment as another indication that rescission is a personal, rather than a class, remedy.

 Although these arguments are well-taken, the definitive argument in support of Security Pacific's position arises out of the statute itself. The language of Section 1635(b) expressly gives a creditor the right to act on a borrower's request for rescission before the claim can be filed in court.[14] In

13. Commonality and predominance are closely related, and a finding of one will satisfy the other. *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 674 (N.D.Ill.1989). Similarly, commonality and typicality are closely related and a finding of one generally compels a finding of the other. *Newberg On Class Actions* § 3.13. Thus, although Security Pacific occasionally throws in a statement about commonality or typicality (without clearly directing its arguments to these requirements), the Court's finding with respect to predominance under Rule 23(b) encompasses any potential concerns regarding the commonality and typicality between plaintiff's complaint and the class allegations.

14. Section 1635(b) provides:
 **Return of money or property following rescission**
 (b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

particular, Section 1635(b) gives the creditor twenty (20) days from the date the obligor notifies the creditor of his or her desire to rescind the consumer loan transaction on the basis of inaccuracies in the disclosure statement. This requirement cuts strongly in favor of treating rescission as a personal, rather than a class, remedy. Under Section 1635, individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit. The individual issues with respect to the court's jurisdiction over each class member's entitlement to rescission, alone, preclude a finding that this case can be managed better as a class, rather than as an individual, action. For instance, there are no allegations in the complaint that the purported class members have gone through the steps of rescission with Security Pacific, have requested or even desire rescission. In addition, the lack of these allegations indicates that the purported class members lack standing. *See generally Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 436–37 (7th Cir. 1994) (court denied plaintiffs' request for declaratory judgment because plaintiff failed to satisfy Article III by alleging an intent to terminate the consumer lease and an injury or harm under the lease). Thus, although the facts and issues surrounding the alleged technical disclosure violation may be common, the availability and enforcement of the rescission remedy, "declaratory" or not, requires factual findings too numerous to manage as a class action. *See Elliott v. ITT Corp.*, 150 F.R.D. 569, 569 (N.D.Ill.1992).

## 2. The Cases

■■■■ Several courts have also held that an alleged rescission class cannot be certified. In the leading case, *James v. Home Construction Co.*, 621 F.2d 727 (5th Cir.1980), the court held that rescission is a personal remedy under Section 1635(b), because TILA gives the creditor twenty (20) days to act on a rescission claim before the

matter can be brought before a court. *Id.* at 731.[15] *Compare Tower v. Moss*, 625 F.2d 1161, 1163–64 (5th Cir.1980) (court allowed rescission as a remedy in TILA case involving technical disclosure claims for individuals who chose to opt-out of the class). The court also relied on three additional arguments, namely, that: (1) potential conflict would arise among parties seeking rescission from a credit institution of limited solvency.[16] *Id.* at 731 n. 7 (citing *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114 (5th Cir.1975); (2) the availability of attorneys fees in successful individual actions undermines "the contention that class treatment furthers the class members' interest ... by allowing them to share the cost of a single attorney." *id.* (citing *Nelson v. United Credit Plan*, 77 F.R.D. 54 (E.D.La.1978)); *see also Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576 (S.D.Ohio 1993) (relying on *James*); and (3) the purpose of the rescission remedy is to restore the parties, as much as possible, to the status quo ante. This purpose would be undone by allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation. A declaratory judgment permitting classwide rescission, under the circumstances presented in this case, would turn Section 1635(b) into a penal provision, a result certainly never explicitly authorized by Congress.

■■■■ According to the *James* court, when these arguments are considered together, it is clear that class actions are not a superior method for adjudicating technical disclosure violation claims where the remedy sought is rescission. *James*, 621 F.2d at 731. Although this district has not "definitively resolved the issue of whether an action seeking rescission under TILA Section 1635 can ever be certified," in *Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D.Ill.1992), the court noted, in dicta, that *James, Tower*, and *Nelson* "militate against certification of a class action." *Id.* at 585.

---

**15.** At the time of the *James* decision, § 1635(b) only gave the creditor *ten* days to notify plaintiff that it had accepted rescission. The statute now gives the creditor *twenty* days.

**16.** This conflict would also serve as a basis for denying class certification on adequacy of representation grounds under Rule 23(a)(4), since "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Fitzsimmons*, 805 F.2d at 697.

 This Court agrees with the rationale of *James* and now "definitively resolves" the question left open by *Elliott,* namely, that an action seeking rescission under TILA § 1635 should not be certified. Technical violations of TILA are strict liability offenses and thus do not require a showing of harm to the plaintiff. An award of rescission, whether "declaratory" or not, would (as Security Pacific argues) impose enormous penalties on the lender (including the loss of interest for the entire period of the loan) out of all proportion to any alleged harm done to them.[17]

### B. Damage Claim

Although Section 1635(b) does not authorize courts to certify a class seeking a declaratory judgment regarding a right of rescission, Section 1640(a)(2)(B) governing damages, as amended, does. Nonetheless, individual and class actions brought under Section 1640 for actual and statutory damages must be brought within one (1) year from the date of the alleged TILA violation. *See* 15 U.S.C. § 1640(e). Jefferson cannot maintain a class action for actual and statutory damages under TILA, § 1640 (Count I), because the class period for this claim is one year prior to the filing of the original complaint in this action (i.e., June 6, 1994). Jefferson is an inadequate representative for the class with respect to this claim because she executed her loan agreement on July 26, 1991, well-beyond the one year statute. As indicated, the class representative must be a member of the class that she seeks to represent. *General Telephone Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982). Without a class representative who executed a loan agreement with Security Pacific involving a TRW loan disbursement fee with the same alleged inaccuracy, this claim is not sustainable.

### CONCLUSION

For the reasons expressed above, plaintiff's Motion for Class Certification is denied. The case will continue in its present individu-

al status. The defendant shall file a response to plaintiff's Motion for Partial Summary Judgment in thirty (30) days. Plaintiff's reply will be due fourteen (14) days thereafter. A status will be set for May 8, 1995, at 9:00 a.m., to discuss further proceedings in this case.

---

**17.** Since the Court finds that this ground alone is fatal to plaintiff's Motion for Class Certification, we need not address Security Pacific's other arguments (i.e., that various laws of the 50 states would have to be applied to Count II, defeating commonality, and that plaintiff's proposed class is overbroad).